IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARRY L. SIMPSON, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 16-1334 |
| JEFFERSON B. SESSIONS, III, ATTORNEY GENERAL OF THE UNITED STATES and THOMAS E. BRANDON, DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS, and EXPLOSIVES, | |
| Defendants. | |

**MEMORANDUM OPINION**

**Schmehl, J.**   /s/ JLS                                                                                         May 9, 2017

## I.   INTRODUCTION

Before the Court is the motion to dismiss of Defendants, Jefferson B. Sessions, III, Attorney General of the United States[1], and Thomas E. Brandon, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter "Defendants") (Docket No. 6). Plaintiff, Barry L. Simpson (hereinafter "Plaintiff") has filed an opposition to the motion, and Defendants have filed a reply.

Plaintiff's Complaint asserts an as-applied challenge to the constitutionality of 18 U.S.C. § 922(g)(4) under the Second Amendment of the United States Constitution. Having read the parties' briefing, and after oral argument, for the reasons that follow, I find that Plaintiff cannot rebut the presumption that he is disqualified from possessing a firearm. Therefore, I will grant the motion to dismiss.

---

[1] On February 9, 2017, Sessions was sworn in as Attorney General of the United States. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Sessions should be substituted for the former Attorney General of the United States as a defendant in this matter.

## II. BACKGROUND

Federal law includes "longstanding prohibitions on the possession of firearms by felons and the mentally ill." District of Columbia v. Heller, 554 U.S. 570, 635 (2008). Particularly, restrictions provide that any person who "has been committed to a mental institution" may not possess firearms or ammunition. 18 U.S.C. § 922 (g)(4).

On May 4, 2002, Plaintiff in this case was involuntarily committed to a mental health institution pursuant to Section 302 of Pennsylvania's Mental Health Procedures Act ("MHPA"), 50 Pa. C.S.A. § 7102, which allows for involuntary emergency examinations and treatment not to exceed 120 hours. According to Plaintiff's Complaint, on May 4, 2002, he and his wife were at their Delaware beach house, where Plaintiff had been drinking and they began to argue. (Compl., ¶ 9.) Plaintiff directed his wife to take him home to Lancaster, when they both thought they were to meet with Plaintiff's doctor, Dr. Russo, at Lancaster General Hospital, to mediate the argument. (Id., ¶¶ 10-11.) Upon arrival at the hospital, Plaintiff's wife executed a Section 302 petition and, after medical examination, it was determined that Plaintiff should be admitted to a facility for a period of treatment not exceeding one hundred and twenty (120) hours. (Id. ¶ 12.) Plaintiff was then transferred to Ephrata Community Hospital and was discharged on May 6, 2002. (Id., ¶ 13.)

On January 7, 2014, Plaintiff petitioned the Court of Common Pleas of Lancaster County in an effort to expunge the record of his involuntary commitment and to obtain relief from state prohibitions on possessing a firearm arising out of his involuntary commitment. (Docket No. 6, Ex. 1 at 1.) On September 11, 2015, the Court of Common

Pleas issued a Memorandum Opinion, denying Plaintiff's request to expunge his records and granting Plaintiff's request to relieve him of the Pennsylvania firearm disability. (Id. at 11, 14.) Lastly, the Court denied Plaintiff's request to "strike the federal law" and "discharge the federal ban as well," because it was not within the state court's jurisdiction to grant such relief. (Id. at 13-14.) In denying Plaintiff's request to expunge the record of his involuntary commitment, the Court stated that the record supported a finding that he was reasonably found to be "severely mentally disabled" at the time of his commitment. (Id. at 11.)

On March 18, 2016, Plaintiff filed the instant action, alleging that he has "refrain[ed] from obtaining a firearm because he reasonably fears" enforcement of 18 U.S.C. §922(g)(4) "should he follow through with his plan to obtain a firearm." (Compl. at ¶ 20.) Plaintiff's Complaint sets forth a cause of action for declaratory and injunctive relief for an "Individualized, as Applied Claim for Relief Right to Keep and Bear Arms" under the Second Amendment. (Id. at ¶¶ 21-22.) Plaintiff alleges that because he is a "responsible, law-abiding American citizen" and "because of [his] unique personal circumstances, including the passage of time since his hospitalization, his law-abiding record over the years, his trustworthiness with firearms, and the lack of danger that his possession of firearms would pose, it is unconstitutional to apply against [him] personally the firearms probation of 18 U.S.C. §922(g)(1)."[2] (Id. at ¶¶ 1-2.)

---

[2] Plaintiff's Complaint references 18 U.S.C. §922(g)(1) as the statute being challenged. At oral argument in this matter, Plaintiff's counsel confirmed that he in fact intended to challenge the as-applied constitutionality of 18 U.S.C. §922(g)(4). Therefore, this matter will be analyzed under 18 U.S.C. §922(g)(4).

Defendants filed a motion to dismiss Plaintiff's complaint on June 27, 2016, and after multiple extensions allowing for a response and a reply brief, oral argument was held on this issue on October 28, 2016.

### III. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) (citing Iqbal, 556 U.S. at 678).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Connelly v. Lane Construction Corp., 809 F.3d 780, 787 (3d Cir. 2016) (quoting Iqbal, 556 U.S. at 675, 679); *see also* Burtch, 662 F.3d at 221; Malleus v. George, 641 F.3d 560, 563 (3d. Cir. 2011); Santiago v. Warminster Township, 629 F.3d 121, 130 (3d. Cir. 2010).

I also must address the opinion of the Court of Common Pleas of Lancaster County that Plaintiff briefly referenced in his Complaint that was attached by Defendants as an exhibit to their Motion. "[D]istrict courts are bound not to 'go beyond the facts

4

alleged in the Complaint and the documents on which the claims made therein [are] based.'" Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016)(quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). I may, however, "consider matters of public record, exhibits attached to the complaint, and undisputedly authentic documents attached to a motion to dismiss." Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 (3d Cir. 2006). Further, "judicial opinions and docket sheets are public records, of which this court may take judicial notice in deciding a motion to dismiss." Zedonis v. Lynch, 2017 WL 511234, * 3 (M.D. Pa., Feb. 8, 2017)(*referencing* Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir. 1993)). Accordingly, I will take judicial notice of the opinion of the Honorable Jay J. Hoberg of the Court of Common Pleas of Lancaster County that was issued on Plaintiff's state court challenge to the firearms disability, which is attached as an exhibit to Defendants' motion.

## IV. DISCUSSION

Defendants move to dismiss the complaint in its entirety. For the reasons that follow, I will grant Defendants' motion in its entirety and dismiss Plaintiff's Complaint.

### A. §922(g)(4) Bars Plaintiff From Possessing a Firearm

There is no dispute that Second Amendment rights are limited. In Heller, the Supreme Court held that "the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 554 U.S. at 635. This holding, however, was narrow and addressed only the "core" right of "law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 634-35.

In this matter, the parties do not dispute the fact that 18 U.S.C. §922(g)(4) prohibits Plaintiff from possessing a firearm due to his 2002 involuntary commitment. Therefore, I must examine whether Plaintiff's Complaint sufficiently asserts an as-applied constitutional challenge under the Second Amendment to §922(g)(4). In doing so, I must examine the case under the Third Circuit's Marzzarella standard.

**B. As-Applied Second Amendment Challenge**

The Second Amendment protects "the right of the people to keep and bear Arms[.]" U.S. Const. amend II. However, the Supreme Court "has not yet heard an as-applied challenge to a presumptively lawful ban on firearms possession." Binderup v. U.S. Att'y Gen., 836 F.3d 336, 359 (3d Cir. 2016) (*en banc*) (Hardiman, J., concurring), petition for cert. filed, 83 U.S.L.W. 947 (U.S. Jan. 5, 2017) (No. 16-847). In Binderup, the Third Circuit reiterated Heller's holdings that the Second Amendment protects the right of "law-abiding, responsible citizens to use arms in defense of hearth and home," and that such a right is "not unlimited." Binderup, 836 F.3d at 343 (*quoting* Heller, 554 U.S. 582). Further, the court repeated Heller's statement that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" are "presumptively lawful regulatory measures." Id. The Binderup court then reaffirmed Marzzarella's "two-pronged approach to Second Amendment challenges to firearms restrictions" such as the instant restriction under §922(g)(4). Binderup, 836 F.3d at 346 (*quoting* Marzzarella, 614 F.3d at 89.) Accordingly, Plaintiff's as-applied challenge in this matter will be analyzed using the Marzzarella framework.

## C. Framework for an As-Applied Second Amendment Challenge Under Marzzarella

Under the Marzzarella framework, there are two steps that must be taken in evaluating an as-applied challenge to a firearm regulation. At step one, a challenger must prove that a presumptively lawful regulation burdens his Second Amendment rights. Binderup, 836 F.3d at 346-47. This requires a "challenger to clear two hurdles: he must 1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member, and then 2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class." Id. at 347 (citing Marzzarella at 173-74). If a challenger succeeds at step one, courts then proceed to step two, where "the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny." Id.

### 1. Step One: Does a Presumptively Lawful Statute Burden Plaintiff's Right to Bear Arms

As discussed above, under step one, Plaintiff must first prove that a presumptively lawful regulation burdens conduct protected by the Second Amendment. In order to do so, he must identify the traditional justifications for excluding his class from Second Amendment protections, and then present facts about himself that distinguish his circumstances from those of persons in the historically barred class. Binderup, 836 F.3d at 347 (*citing* Barton, 633 F.3d at 173-74.) "A challenger will satisfy the first step of the [Marzzarella] framework only if he proves that the law or regulation at issue burdens conduct protected by the Second Amendment." Id. at 356. "Not only is the burden on the challenger to rebut the presumptive lawfulness of the exclusion at Marzzarella's step one, but the challenger's showing must also be strong." Id. at 347.

7

### a. §922(g)(4)'s Ban is Presumptively Lawful

First, I find that the firearm ban contained in §922(g)(4) is presumptively lawful. As stated by the Heller court, longstanding prohibitions on the possession of firearms by the mentally ill are presumptively lawful. 554 U.S. at 626-27. Further, the Third Circuit has interpreted Heller as "delineat[ing] some of the boundaries of the Second Amendment right to bear arms," and has concluded on that basis that "the Second Amendment affords no protection for . . . possession by felons and the mentally ill." Marzzarella, 614 F.3d at 92. Thus, under Heller and Marzzarella, §922(g)(4) permissibly prohibits firearms possession by an individual such as Plaintiff, "who has been committed to a mental institution." 18 U.S.C. § 922(g)(4). Therefore, the firearms ban is presumptively lawful, and Plaintiff has properly alleged that he is subject to it. Therefore, I must now analyze the instant matter under the first step of the Marzzarella framework.

### b. Traditional Justification for Denying the Mentally Ill the Right to Bear Arms

To meet the first hurdle under step one, Plaintiff must identify the traditional justifications for barring someone who is mentally ill from the protections of the Second Amendment. First, a review of Plaintiff's Complaint shows that he has failed to discuss the historical justifications of a common law right to bear arms at all, nor has he attempted to refute the historical sources discussed by Defendants in their brief.

In setting forth the historical justification for barring the mentally ill from possessing firearms, Defendants argue that "disarmament of individuals perceived to be dangerous" was frequent in the American colonies, and was not viewed as being inconsistent with the right to bear arms. (Docket No. 6, p. 10) (*citing* Joyce Lee Malcolm, To Keep and Bear Arms at 140-41; United States v. Yancey, 621 F.3d 681, 684-85 (7th

Cir. 2010); United States v. Vongxay, 594 F.3d 1111, 11198 (9th Cir. 2010)). Defendants also discuss a proposal offered by the Pennsylvania antifederalist faction at the Pennsylvania Convention providing that "the people have a right to bear arms for the defense of themselves and their own state or the United States, or for the purpose of killing game; and no law shall be passed for disarming the people or any of them, unless for crimes committed, or real danger of public injury from individuals." Id. (citing The Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents, 1787, reprinted in 2 Bernard Schwartz, The Bill of Rights: A Documentary History 665 (1971). A similar proposal was made by Samuel Adams at the ratifying convention in Massachusetts, recommending that "said Constitution be never construed to authorize Congress . . . to prevent the people of the United States who are peaceable citizens, from keeping their own arms." Schwartz, The Bill of Rights, at 674-75, 681. Both the Pennsylvania and Massachusetts proposals were identified by Heller as "highly influential" precursors to the Second Amendment. 554 U.S. at 603-04. Defendants state that "historical sources further show that the colonial public did not view persons with a history of mental disturbance as being among those who could bear arms without 'real danger of public injury.'"(Docket No. 6 at 11)(*citing* Schwartz, The Bill of Rights at 665.) Defendants also argue that Second Amendment scholars "agree that the right to bear arms was tied to the concept of a virtuous citizenry." (Docket No. 6 at 11) (*citing* United States v. Yancey, 621 F.3d 681, 684-85 (7th Cir. 2010).

However, Defendants have not presented any historical evidence that specifically includes the class to which Plaintiff belongs – those previously committed to a mental

9

institution – as a part of the group that historically were disarmed. In an attempt to justify the lack of historical evidence, Defendants state "the absence of historical statutory prohibitions on firearm possession [by such persons] may have been the consequence of the fact that in eighteenth-century America, justices of the peace were authorized to lock up persons deemed too dangerous due to mental illness," Yancey, 621 F.3d at 685, thereby eliminating the need for laws formally disarming them.

It is clear that the historical record does not specifically mention mentally ill individuals and their alleged propensity for violence when discussing those who should not be permitted to bear arms. Further, Congress did not prohibit firearm possession by those who had been committed to a mental institution until 1968. United States v. Yancey, 621 F.3d 681, 685 (7th Cir. 2010). When the Supreme Court in Heller discussed the longstanding prohibition on gun possession by the "mentally ill," it gave no direction or guidance as to this category. Did the Supreme Court mean those who have ever suffered from mental illness at any time or only those who are currently mentally ill? Did the Supreme Court mean this term to include non-violent forms of mental illness as opposed to some other forms of mental illness? As of this writing, we do not have the guidance to answer these questions. However, I do find that there is clear historical evidence that persons prone to violent behavior are outside the scope of Second Amendment protection. As stated recently by a court in this circuit, "while we do not know the exact intended parameters of the category of 'mentally ill' that the Supreme Court referred to in Heller, it logically appears that the historical justifications for the prohibition on firearm possession by the 'mentally ill' most likely involved a concern over individuals who had mental impairments that made them dangerous to themselves or

others in society." Keyes v. Lynch, 195 F.Supp.3d 702, 719-720 (M.D. Pa. July 11, 2016.) Certainly, I agree, and I find that the historical record does not directly support the proposition that persons who are once committed due to mental illness are forever barred from exercising their Second Amendment rights. That will be a question for another day. I do find, however, that the historical record does support the proposition that persons with mental illness that made them dangerous to themselves or others are outside the scope of Second Amendment protections.

### c. Distinguishing the Historically Barred Class

Therefore, I must now determine whether Plaintiff has presented facts about himself that distinguish his circumstances from those of person in the historically barred class; that is, whether Plaintiff has presented facts that show he is "no more dangerous than a typical law-abiding citizen," or that he "poses no continuing threat to society." See Keyes, 195 F.Supp.3d at 720.

Plaintiff's Complaint contends that "the passage of time since his hospitalization, his law-abiding record over the years, his trustworthiness with firearms and the lack of danger that his possession of firearms would pose" are all reasons why §922(g)(4) is unconstitutional as applied to him. (Compl., at ¶ 22.) Specifically, Plaintiff alleges that he is a "responsible, law-abiding American citizen. . . [with] no history of violent behavior, or of any conduct that would suggest he would pose any more danger by possessing a firearm than an average, law-abiding responsible citizen. (Id. at ¶ 16.) However, the opinion from the state court proceedings contradicts these allegations. After "drinking" and "arguing with his wife," (Compl. at ¶ 9), Plaintiff was involuntarily committed. In the state court opinion, it is documented that he threatened "to get his gun and end this."

(Docket No. 6, Ex. 1 at 9.) Clearly, this statement is evidence of a person who is a danger to himself or to others.

The state court opinion also found that Plaintiff's commitment had been proper and that he had been reasonably determined to have been severely mentally disabled at the time. (Id. at 9.) Plaintiff's wife completed the §302 petition in the emergency department which stated that Plaintiff had threatened suicide. (Id. at 10.) Clearly, at the time of his commitment, Plaintiff posed a threat to himself, at a bare minimum, if not also to his wife or to others as well. This directly refutes Plaintiff's claimed "lack of dangerousness."

Next, Plaintiff argues that the passage of time, as well as his ongoing mental health treatment during the intervening years, has caused him to no longer be a threat to himself or to others. Plaintiff acknowledges that he "has continued to seek mental health treatment since his commitment . . . and has worked with multiple health professionals to manage his medication needs and mental health diagnoses." (Docket No. 10 at 4, *quoting* Pa. Order at 14.) However, as recently as 2015, Plaintiff continued to maintain a mental health diagnosis of "anxiety disorder unspecified." Id.

First, the passage of time is immaterial to the analysis in this matter. There is no exception to §922(g)(4) for the passage of time. Further, when addressing other types of firearms disabilities, courts have clearly rejected the claim that passage of time or evidence of rehabilitation will restore Second Amendment rights. *See e.g.*, Binderup, 836 F.3d at 349 ("We reject [Barton's] claim that the passage of time or evidence of rehabilitation will restore the Second Amendment rights of people who committed serious crimes."); United States v. Chovan, 735 F.3d 1127 (9th Cir. 2013) (declining to

create an exception to §922(g)(9) due to the fact that fifteen years had passed since plaintiff's domestic violence conviction, during which time he had been law-abiding).

In addition, the fact that Plaintiff continues to undergo mental health treatment, seek medication management and as of 2015, maintained a diagnosis of anxiety disorder unspecified, is unpersuasive. At the time when Plaintiff threatened to get his gun and "end this," (Docket No. 6, Ex. 1 at 3,) he had been undergoing psychiatric treatment for several months. Clearly, despite Plaintiff's claims that he has operated a successful business and experienced "positive change" in his marriage over the last 15 years, had owned guns since the age of 12, belonged to the high school rifle team and had, until this incident, an approved concealed weapons permit, his mental illness ultimately caused him to behave so dangerously that he was involuntarily committed. The fact that he is now undergoing psychiatric care can be given no weight, since he also was seeking such care leading up to the incident in question.

Lastly, two cases have recently found merit in as applied challenges to §922(g)(4), finding that each plaintiff's circumstances were distinguishable from the historically-barred class. However, both cases are distinguishable from the instant set of facts.

First, in Keyes v. Lynch, the Middle District of Pennsylvania found that §922(g)(4) violated the Second Amendment as applied to Yox, one of the plaintiffs, who had been involuntarily committed as a juvenile. 195 F.Supp.3d 702 (M.D. Pa. July 11, 2016). However, Yox was found to have an actual track record of responsible firearms use in his career in the military and as a state correctional officer, which distinguished his circumstances from those of persons historically barred from the Second Amendment.

195 F.Supp.3d at 720. In addition, Defendants in that case provided no additional evidence of mental illness after the one episode that led to Yox's commitment. Id. Plaintiff in this case does not have the benefit of either of those facts, as he has no record of responsible firearm usage and he has continued to receive mental health treatment throughout the years. The Court in Keyes stated that "it is highly unlikely that most of the people who have been adjudicated as a 'mental defective' or who have been committed to a mental institution will be able to present a court with sufficiently compelling facts to warrant relief from federal firearms disability." Id. at 722.

Plaintiff also relies upon Tyler v. Hillsdale County Sheriff's Dept., 837 F.3d 678 (6th Cir. 2016), in which the majority of the court found that the case could not be resolved at step one of the analysis and remanded to the district court for application of the second step. Notably, Plaintiff in Tyler was thirty years removed from a brief depressive episode and had no intervening mental health or substance abuse problems since then. Id. Tyler is therefore distinguishable from the instant matter, as Plaintiff has continued to seek mental health treatment since his involuntary commitment.

I find Plaintiff cannot produce sufficient facts or evidence to distinguish himself from the historically barred class, as he has no record of responsible firearms usage and he has undergone continuing mental health treatment. Accordingly, he cannot meet the second prong of step one under the Marzzarella framework, and his as-applied challenge to 18 U.S.C. §922(g)(4) must fail.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted and this matter shall be dismissed.